J. A. ANDERSON, Administrator of Wm. Fellows, v. S. E. NORTON et al.

AND

J. A. ANDERSON, Administrator of Charles and Freda Winter, v. D. R. COOK et al.

1. PARTNERSHIP. *Partnership debts. Evidence. Admissions of partner.* A note executed by one member of a firm for money borrowed upon the credit and for the benefit of the partnership, is a partnership debt, and a writing by the other partner that the money was so used, and the debt was a partnership debt, is competent evidence in a suit between creditors of the partnership.

2. SAME. *Surviving partner. No power to give preference.* A surviving partner has no power by deed of trust on partnership property, to give one creditor preference over another.

3. SAME. *Mortgage to secure individual debts. Priority.* A mortgage executed by the members of a firm, upon the real estate of the firm to secure an individual debt of a partner, free from fraud or collusion, creates a prior lien to partnership debts.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

Anderson *v.* Norton.

C. F. VANCE for complainant.

GANTT & PATTERSON, HUMES & POSTON, J. J. JOHNSON, SMITH & COLLIER, ESTES & ELLETT, E. L. BELCHER, W. M. RANDOLPH and R. D. JORDAN for defendants.

WILSON, Sp. J., delivered the opinion of the court.

The record containing these various causes is very voluminous. With the questions of fact settled, but few questions of law are presented. We will state them as briefly as possible.

In 1857 or 1858, D. R. Cook and S. A. Norton engaged as partners in the grocery business in the city of Memphis, Tennessee, under the firm name of Cook & Co. Upon the approach of the Federal forces to that city in June, 1862, Cook moved to the State of Georgia, within the territory held by the Confederate armies, where he has since lived, leaving Norton in Memphis to wind up the business of the firm.

Cook became a partner of one Cheek in business in Georgia. He also, in the fall of 1872, while still a resident of Georgia, engaged with S. A. Norton in business in Memphis, under the firm name of Cook & Norton. Norton died in 1873, and by his death the latter firm was dissolved. Neither the firm of Cook & Co., Cook & Norton, nor the individual members, at the date of the institution of these various suits, owned any personal property, but as firms and individually possessed certain real estate

which was heavily incumbered. As this litigation involves, in addition to contests over the validity of certain debts as existing debts against the firms or the individual members, the settlement of questions under these incumbrances, it is proper to state them, their date and by whom executed.

On February 1, 1872, Cook & Norton executed a deed of trust to E. L. Belcher to certain of the real estate belonging to the firm of Cook & Co. to secure a debt to one Winter, amounting to about $9,000, evidenced by three notes signed by D. R. Cook as principal, and S. A. Norton and said Belcher as sureties. In April, 1875, Cook, as surviving partner of Cook & Co., conveyed certain of the real estate of the firm to W. M. Smith in trust to secure the payment of a large debt due from it to the Bank of West Tennessee.

Cook, on April 8, 1867, by deed conveyed to S. A. Norton an undivided half interest in two lots in Memphis, known in the record as the Clay block and the Jefferson street property. This deed of Cook to Norton recites, in substance, that while the title to the property conveyed is in the former, it is nevertheless the property of the firm of Cook & Co., having been bought and improved with its funds and for its benefit. It also recites that Norton is to take the undivided half interest conveyed to him subject equally with the half remaining in the conveyor, to liens for unpaid purchase money, to mortgages and deeds of trust executed on the property to secure the firm debts of Cook & Co, and to the

outstanding debts of said firm not secured by mortgage or deeds of trust. It is proper, in this connection, to note the fact that this deed was signed by both Cook and Norton.

In August, 1866, D. R. Cook and S. A. Norton leased from William Fellows a lot on Second street, in Memphis, for the term of eleven years. The lease was signed "S. A. Norton, and D. R. Cook by S. A. Norton attorney in fact," and the notes given therefor were signed "Cook & Norton." Some of the notes given for this lease being unpaid at the death of Fellows came into the hands of Anderson, his administrator, and they constitute his demand in this controversy.

S. A. Norton, on the 5th of December, 1872, and on the 5th of January, 1873, borrowed $10,000 from Mrs. Caldwell, giving his two promissory notes for $5,000 each, bearing ten per cent. interest, payable quarterly. To secure them he executed to her a mortgage on a part of the real estate conveyed to him by D. R. Cook, by the deed of the 8th of April, 1867, before recited. The mortgage and the notes due her constitute her demand in this litigation.

The firms of Cook & Co. and Cook & Norton, and the members were largely indebted to other parties. With the individual and firm affairs thus situated, D. R. Cook, on the 13th of July, 1875, as surviving partner of the firms, filed his bill in the chancery court at Memphis, against Mrs. S. A. Norton, the widow and administratrix of S. E. Norton, his heirs, and the firm creditors, to wind up the business of said firms and to pay debts.

Soon thereafter, in rapid succession, various creditors of the firms, and of the individual members, filed bills for the same purpose, or to enforce collection of their demands, and several parties, upon application by petition, were allowed to become parties, to establish their debts, to contest for priority, and the demands of others for satisfaction out of certain property upon which they claimed prior liens. Anderson, administrator, in one of his bills, attaches the property of Cook, and attacks the conveyance of Cook as surviving member of the firm of Cook & Co., made to secure the debt due from the firm to the Bank of West Tennessee. He also, in his bill, suggests the insolvency of the firms and the individual members, and seeks to have their estates settled as insolvent estates.

Mrs. Bradley, likewise, in her cross-bill, seeks to set aside the conveyance of Cook to secure the Bank of West Tennessee.

Being thus encompassed with debt and litigation, Cook, as a member of the firms of Cook & Co., Cook & Norton and Cook & Cheek and individually, in March, 1876, filed his petition for a discharge in bankruptcy in the Federal District Court for the Northern District of Georgia, and was, by that court, in December, 1876, regularly adjudged a bankrupt. His assignees in bankruptcy are made parties. They claim the assets of Cook and rely upon his application in the bankrupt court to defeat the lien of attachments levied within four months preceding the filing of his petition, and Cook pleads his discharge in bar of any personal decree against him.

The attacks of Anderson, administrator, and of Mrs. Bradley, upon the conveyance made by Cook as surviving partner, to secure the Bank of West Tennessee, were predicated upon allegations that he had no power, as surviving partner, to give the bank a preference. A demurrer to this part of this bill was sustained by the special chancellor before whom the question was tried.

A large volume of evidence was introduced, and on the 14th of January, 1880, the various causes being consolidated, were referred to a special commissioner. He was directed to report the debts outstanding against the firm of Cook & Co., their date and origin, how evidenced and secured, and their respective priorities; the existing indebtedness of the firm of Cook & Norton, and of the individual members, how evidenced and secured, and their respective preferences, if any; and, also, the assets, real and personal, of said firm, and of the individual members, how incumbered and where situate.

The special commissioner filed his original report on the 19th of April, 1880, and a supplemental report on the 18th of May, thereafter. In his original report he sets out the property of the firms and of the members, and in both reports taken together, their debts, to whom payable, where located, how and when secured, if secured at all, and their respective amounts, with interest calculated to a common date. By them, the liabilities of Cook & Co. were shown to amount to $68,955.41; and all the debts aggregating this sum were reported as standing on an equal footing, with

respect to satisfaction out of the firm property except the debt of the Bank of West Tennessee of $5,539.50, secured by the deed of trust executed by D. R. Cook, surviving partner, as hereinbefore stated. He reported, in his original report, the liabilities of the estate of S. A. Norton to be $16,033.62, specifying the several debts constituting this sum; the debts of D. R. Cook at $14,802.63; and those of Cook & Norton to be $39,-624.27. His amended report added some additional items of indebtedness against Cook & Norton, increasing somewhat the totals of their debts as above stated, but they are not further noticed here, as they are not specially involved in controversy.

Various exceptions were filed to the report of the special commissioner. We need not notice them in detail, nor minutely recite the action of the learned chancellor below on them. To do so would uselessly incumber this opinion, and make it necessarily of unwieldy and unwholesome length. It is sufficient to state, that with some modifications, he confirmed the report and rendered a decree for the sale of the property of the firms and of the individual, giving specific directions as to the application of the proceeds. From his decree, J. A. Anderson, administrator of Wm. Fellows, Mrs. M. W. Caldwell, Mrs. Jane Bradley, R. E. Crane and R. H. Richards, assignees in bankruptcy of D. R. Cook, Cook & Co., and Cook & Norton, Mrs. Belcher, J. A. Anderson, administrator of Charles Winter and Freda Winter, M. W. Clayton, W. W. and R. J. Young, prayed an appeal to this court.

All of these appellants perfected their appeals except

Anderson *v.* Norton.

Mrs. Belcher. The Referees, in a full and exhaustive report, have recommended an affirmance of the decree of the chancellor, except in two particulars. First: they report that the chancellor was in error in holding that the $10,000 note of Mrs. Bradley, known in the record as the $10,000 gold note, was a debt against Cook & Co., and say that it is the individual debt of S. A. Norton; and secondly, that he was in error in sustaining the demurrer of the Bank of West Tennessee, holding that the deed of Cook, surviving partner, giving the bank a preference was valid.

Solicitors of the assignees in bankruptcy, of Mrs. M. W. Caldwell, of Helen and Freda Winter, of the Bank of West Tennessee, and of J. A. Anderson, administrator of Wm. Fellows, have filed exceptions to the report of the Referees. Some of the parties have put in numerous and lengthy exceptions, covering the whole field of facts embraced in the record, and others raise questions of law upon certain facts claimed to be established in the record, or upon the facts as stated by the Referees.

It is useless to state and argue all the positions assumed by exceptants. The real gist of the controversy as presented by the parties may be resolved into three specified contentions:

First. All the exceptants vigorously object to the allowance of the debt of Mrs. Bradley, amounting at the date of the report of the special commissioner, to the sum of $36,471.44 as a debt against the firm of Cook & Co.

Second. The trustee and representative of the Bank

of West Tennessee contends that the Referees are in error in rejecting the trust deed executed by Cook, surviving partner, giving the bank a preference in the payment of its debt, invalid and inoperative, because its execution by Cook was without legal warrant and power.

Third. The administrator of Fellows is objecting because his claim is not reported as a claim against the firm of Cook & Co.

We will notice these contentions in their order as above stated. In order to do so it is necessary to briefly state the facts in connection with this claim of Mrs. Bradley. It is conceded to be based on a note of date February 1, 1873, for $20,671.20, bearing ten per cent. interest, and due February 1, 1874, signed Cook & Co. The note was executed, and thus signed by S. A. Norton. It appears that Gen. Thos. H. Bradley, the husband of Mrs. Bradley, held two notes due in 1860 and 1861, respectively, for $2,112.94 and $1,520, against the firm of Cook & Co. By his will, of date February 18, 1864, he bequeathed these notes with other properties to his wife. There is proof tending to show that Mrs. Bradley loaned money to S. A. Norton, and that in 1866 she took his individual notes for it. But she testifies that all the money she loaned Norton was for the firm of Cook & Co., and for the benefit of said firm and on its credit.

We may assume it as proved in the record that in 1866 she did take two notes signed by Norton alone for over $19,000. But in a subsequent settle-

ment with Norton these notes were recognized as the notes of Cook & Co., and a note given for the same and the other indebtedness of the firm to her, both together amounting to $23,630.13. This sum was reduced by payments, and on February 1, 1873, the note in controversy for $20,671.20 was executed by Norton in the firm name.

Mrs. Bradley testifies that the money loaned Norton was for the firm of Cook & Co., and to pay off its debts. In support of her testimony there was introduced as evidence the following paper signed by Cook: "This is to certify that nineteen thousand eight hundred and eighteen dollars ($19,818), borrowed by S. A. Norton of Mrs. Gen. Bradley was for the use of Cook & Co., and to be applied in payment of said Cook & Co.'s liabilities, and I am equally bound with S. A. Norton for its payment as one of the firm of Cook & Co., with S. A. Norton. Memphis, March 15, '66. D. R. Cook."

This paper was found among the papers of S. A. Norton after his death, and a few days before it was offered in evidence. It was proved to have been written and signed by Cook. It was objected to as incompetent evidence in the court below, and its inadmissibility is insisted on here.

The grounds of inadmissibility stated and relied on here are: First. It is the declaration of a third party not under oath, and living, but not called to testify. Second. It was not offered as evidence against Cook, but against Mrs. Caldwell contending for priority with Mrs. Bradley, Mrs. Caldwell not being in privity with

Cook. And third. Because the declarations of Cook cannot establish the Bradley claim as a partnership debt of the old firm of Cook & Co., because the concurrent act of both partners could not create a firm debt after the dissolution of the partnership which could entitle such a creditor to share with the real firm creditors in the assets of the firm.

The partnership of Cook & Co. was dissolved in June, 1862, by the exigencies of the war, and the tacit agreement of the partners involved in the removal of one of the parties to another State, and their conduct in connection with their cessation of business. Mr. Norton was left in Memphis with power and authority to settle up the firm affairs. It is conceded that Norton, upon the dissolution of the firm, was not given any power, special or general, independent of his power and rights as a member of the firm, to bind it by new contracts. It is settled that without this power was conferred he had no such authority. It is also settled that where this power is given, a member of a dissolved partnership may bind the firm by new contracts. And so, where one partner of a dissolved firm, without special power, enters into a new contract in the firm name, the other partner or partners may ratify his action, and if it be ratified, in the absence of fraud or collusion, it will bind the firm and its property in the same way and to the same extent as if the partner had been given the power to make it upon the dissolution of the firm: *Hatton* v. *Stewart*, 2 Lea, 233; *McElroy* v. *McLean*, 7 Cold., 140; *Dunlap* v. *Limes*, 49 Iowa, 177.

Anderson *v.* Norton.

Norton borrows this money from Mrs. Bradley. He signs the firm name to the note given for the money. It is obvious that it is a firm note as to him, no fraud or collusion being alleged as shown. Mrs. Bradley testifies that she loaned the money to Norton for the use and benefit of the firm. And Cook, the other member of the firm, in order to show that the notes executed by Norton were firm notes given for the benefit of the firm, and to furnish Norton evidence of this fact against himself, and to approve of his action in borrowing the money in the firm name, prepares and delivers to Norton this paper offered in evidence.

It will not be seriously contended that in a contest made by Cook against Norton over these notes, this paper would be admissible evidence in favor of the latter to establish this firm character. If admissible for this purpose, in a contest between the partners, it is extremely difficult, if not impossible, to imagine a sound reason for its exclusion when presented as evidence in support of the notes and the authority for their execution by the owner of the notes suing for their recovery.

It is a misconception to argue that its admission violates the rule, administered with different qualifications by different courts, that the admission of one partner as to the existence of a debt against the firm made subsequently to the dissolution of the partnership, is not binding on the partnership or on the other partners. We do not dispute this rule, or its soundness, in its proper application. It has no rele-

vancy here.   Norton is not complaining.   Cook is not.   If Norton had written it and delivered it to Mrs. Bradley, Cook might in a proper case be heard to object.   If Cook had written it and delivered it to her, Norton or his estate, in a proper case, might object.   But when the members of a dissolved firm all say, by their admissions or declarations, that a note executed in their firm name is a firm note, and that it was given for money borrowed for firm purposes, we are unable, in the absence of an allegation and proof of fraud or collusion, to understand, much less sanction, a principle of evidence that excludes them.

Equally without legal merit is the objection that this evidence was offered, not against Cook, but against Mrs. Caldwell, who was contending for priority with Mrs. Bradley.   It was offered, as an admission, tending to show that the debt of Mrs. Bradley was a valid debt against the firm of Cook & Co. in a proceeding by Mrs. Bradley to establish and collect it as a debt due from the firm.   The fact that Mrs. Caldwell is a creditor of Norton, a member of the firm, holding a mortgage upon the undivided interest of her debtor in real assets belonging to the firm, and is, therefore, in respect to her debt not in privity with Cook, the other member of the firm, cannot deprive Mrs. Bradley of the evidence of a written admission and acknowledgment of Cook, given to Norton, and accepted by him for his protection, tending to show the character of her debt and its validity.   To so hold would have neither the sanction of common sense nor authority.   It is competent simply because

it is the admission of a party of record against his interest, and being of this character a reasonable presumption of its truth is attached to it : Phelps on Ev., 1 vol., 402; Greenl. Ev., vol 1, sec. 169. An admission, whether it relate to the contents of a written agreement or any thing else, is evidence against the party making it in a suit involving the subject-matter of the admission: *Ibid,* vol. 1, 422.

It has been repeatedly held "that the admissions of a bankrupt before his bankruptcy are competent to establish a debt against him." So, also, in contests over the property of the fraudulent debtor, the admissions of the debtor prior to the conveyance are competent evidence to establish the indebtedness secured by it: Bump. Fraud Con., (2d ed.), 556 and notes. But it is said that Cook, the author of this paper, was not called to testify about it.

There is nothing in this: "Admissions may be shown by writing under the hand of a party, or by a witness who heard them, or the party himself may be called, if competent": 1 Greenl. Ev., sec. 191.

It is further urged, that the admissions of Cook contained in this paper ought to be excluded, on the ground that he did not personally know the truth of what he admitted therein. This is not essential. If a party, upon evidence satisfactory to him as to the truth of a transaction, makes a statement in relation to it against his interest, his statement is competent evidence against him, although it may not be entitled to great weight: 1 Halstead Ev., p. 436 ; *Sparr* v. *Willman,* 26 Miss., 230.

We hold, therefore, that the chancellor below and the Referees were correct in their conclusions as to this debt of Mrs. Bradley, embraced in the $20,671.20 note of date February 1, 1873. The contention of the Bank of West Tennessee is that the deed of trust executed by Cook, surviving partner, to secure its debt, is valid, and gives it a preference over the general creditors of the firm of Cook & Co. Its debt is conceded to be a firm debt. It is evidenced by a judgment of this court. Norton was dead, and the firm insolvent; and the question is: can the surviving partner of an insolvent firm mortgage the real assets of the firm to one creditor, thereby giving him a preference over other creditors of the partnership?

"It seems to us," says Judge McKinney in the case of *Bancroft, Beaver & Co. et al.* v. *Snodgrass et al.*, 1 Cold., 430, *et seq.*, "that the doctrine which asserts such a power in the surviving partners is irreconcilable with the established rights, as declared by law, of the representatives of the deceased partner, as well as of the joint creditors of the firm, and consequently cannot be sound."

In the case of *Watkins, Ad'mr*, v. *Fokes*, 5 Heis., 185, *et seq.*, this court, Chief Justice Deaderick delivering the opinion, directly approve the case of *Bancroft* v. *Snodgrass*, above cited. The Chief Justice, after quoting or referring to this case, says: "It is furthermore declared in the case already cited in 1 Cold., that the joint creditors have an equity or *quasi* lien under and through which the specific lien of the

partners entitles them to have the partnership effects ratably appropriated to the discharge of each and all of the joint debts in case of a dissolution by death or bankruptcy of one of the partners, citing Story on Part., sec. 361; 2 Story Eq., sec. 1252; and this is said to be the "well established equity of all the joint creditors in the case of the death or bankruptcy of one of the partners." " If," continues the Chief Justice, " it be the imperative duty of the personal representative to see to the application of the joint effects to the joint debts, and if, in case of the death or bankruptcy of one partner, the joint creditors have an equity or *quasi* lien entitling them to have the partnership effects ratably appropriated to the discharge of each and all of the joint debts, it is manifest that under the circumstances of this case no one of the creditors of the partnership is entitled to appropriate the partnership effects to his own debt to the exclusion of all other creditors." In that case, it is to be noted, that the chancellor, as in this case, gave certain creditors priority of satisfaction under an assignment. His action was reversed.

The authority of these cases has not been shaken or doubted in an opinion delivered in any subsequent case before this court. To hold valid the assignment to the bank in this case we must reverse these decisions and the settled law in Tennessee. These decisions are not in conflict with the weight of authority in England, and from the other States of the United States. On the contrary, they are abundantly supported. And while many forcible arguments, aided

by a technical logic springing from other analogous powers, conceded to exist in a surviving partner in dealing with the effects of the partnership, can be presented in favor of reversing our rule on this subject, we can see no sound or sufficient reason, with respect to the harmony of our jurisprudence or the demands of public policy, to authorize us to change the forum rulings of this court.

The report of the Referees in recommending a reversal of the decree of the chancellor on this point is correct.

The claim of Anderson, administrator of Fellows, originated in a lease of Fellows, in July, 1866, of certain real property in Memphis to D. R. Cook and S. A. Norton individually, and not as a firm. The notes given for this lease are not signed "Cook & Co.," but by Cook & Norton. The face of the notes and the lease, the fact of the dissolution of the firm, and its leasing to do business over four years before their execution, and the further fact that it was no part of the business of the firm of Cook & Co. to lease property to improve and rent out, all join strongly against the contention that this Fellows claim is a liability of the firm of Cook & Co. The proof adduced, under all the circumstances in the record, to overturn these facts, is not sufficient, especially as Cook himself, in his deposition, says this lease was an "isolated venture" of Norton and himself, and had no connection with the firm of Cook & Co.

The allegations of the bill of Cook, surviving partner in this case, and his schedules and proceedings in

bankruptcy are relied on as creating an estoppel upon Cook to dispute the firm character of this claim.

Admissions or declarations made *in juris* are often entitled to little weight, because made in ignorance of the facts. The doctrine of estoppel, however, applies with peculiar force to admissions or statements made under oath in the course of judicial proceedings. But they are not always conclusive, and if it be made satisfactorily to appear that such admissions or statements were inconsiderately made, or made without a full knowledge of the facts, 'the court will relieve the party from the consequences of them: *Hamilton* v. *Zimmerman*, 5 Sneed, 39, 41 ; *Seay* v. *Ferguson*, 1 Tenn. Ch., 293.

The explanation of Cook and E. T. Belcher as to these schedules and how they were prepared, is satisfactory.

The debts due to Helen and Freda Winter present a difficult question. They seem to be the individual indebtedness of D. R. Cook, with Norton and Belcher as personal sureties, with the further security of a mortgage to E. L. Belcher as trustee on the real estate of the firm of Cook & Co., signed by both Cook and Norton, and also a mortgage executed by D. R. Cook on his individual real estate. While these are the individual debts of D. R. Cook, yet as the two members who had composed the firm of Cook & Co. executed the mortgage upon partnership property, the question is, does the mortgage, being free from fraud and collusion, create a prior lien to partnership debts?

The Referees find the facts as above, and the solicitor excepts to their finding as to the debt being the debt of Cook and not the debt of the firm of Cook & Co., but does not except to their statement of the law that the partnership assets are not liable for its payment, or that the mortgage executed by both partners does not create a prior lien.

We have been furnished with no authorities on the point raised by the query or the facts, but upon sound reason we are opinion that the mortgage upon the partnership real estate signed by the members who had composed the firm does create a prior lien to partnership debts.

The report of the Referees is, as modified, confirmed, and the decree of the chancellor, as modified, is affirmed with costs.